CHICAGO—FIRST DISTRICT—JANUARY, 1919.    137

The Evangelical Lutheran St. S. Cong. v. Bishop, 213 Ill. App. 137.

The Evangelical Lutheran St. Stephan's Congregation, Defendant in Error, v. James F. Bishop, Administrator, et al. (Defendants). Frauen Verein des Deutschen Altenheim, Plaintiff in Error.

## Gen. No. 24,507.

1. CHARITIES—*when death of inmate transferring property to old people's home necessitates return of property.* Contract for admission to an old people's home under which the applicant was to pay a certain sum in cash and to turn over all of her estate to the home, the applicant to be accepted as an inmate on probation for the period of one year, the contract reciting that it was to be of "binding force only for the period of one year," but should applicant continue in the home beyond that period, then the contract should be binding during her life, in conjunction with the by-laws of the home authorizing a refusal of final admission at the end of the year or a withdrawal by applicant, and providing for a refund in such cases less a charge for maintenance, construed as requiring a return of the estate so transferred, where the applicant died before the expiration of the period of one year.

2. CHARITIES, § 22*—*when contract for admission to·charitable institution construed against it.* Where a contract between a charitable institution and an applicant for admission to the institution was prepared by it, language of the contract, where doubtful and uncertain, will be construed most strongly against it.

3. BILLS AND NOTES, § 377*—*when ownership of note presumed.* Possession of a note duly indorsed and delivered by the payee therein named creates a presumption of ownership of the note in the holder, but the presumption may be overcome.

Error to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed January 27, 1919.

HUTTMANN, CLOYES & CARR, for plaintiff in error.

FRANCIS H. McKEEVER, for defendant in error; CHARLES GOODMAN and LEWIS C. COYNER, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

By this writ of error it is sought to reverse a decree of the Superior Court on a bill of interpleader filed by the Evangelical Lutheran St. Stephan's Congregation. James F. Bishop, administrator of the estate of Margaretha Paetzman, deceased, and The Frauen Verein des Deutschen Altenheim were made parties defendant.

The complainant, the Evangelical Lutheran St. Stephan's Congregation, on April 4, 1910, during the lifetime of Margaretha Paetzman, executed and delivered to her a promissory note for the sum of $2,000. There was due on this obligation at the time the decree was entered in the Superior Court the sum of $1,610.98.

On May 15, 1913, Margaretha Paetzman, being then 76 years of age, made an application for admission to the Frauen Verein, otherwise known as the German Old People's Home (to be hereinafter called "The Home"), in which application she agreed, in case of admission, to transfer to "The Home" her entire property and estate. On April 27, 1914, the deceased and "The Home" entered into an agreement under which it is asserted "The Home" became the legal owner of the note delivered by complainant to deceased. Under the terms of this writing "The Home" agreed to admit deceased as an inmate "into said Deutschen Altenheim for a period of one year from this date, respectively for life." The contract also provided as follows:

"It is further covenanted and agreed between the parties executing this contract that the provisions thereof shall temporarily be of binding force only for the period of one year from this date, during which period the said Margaretha Paetzman may voluntarily leave the institution or the said Frauen Verein may dismiss her from the institution, in accordance with the provisions of said statutes and by-laws of said Frauen Verein concerning the refund of the paid-in

admission fee and the property and estate conveyed. Should said Margaretha Paetzman, after the expiration of that year, remain in the institution after mutual agreement thereupon, then and in such case the provisions of this contract shall be effectual and binding for her lifetime.''

Deceased agreed to pay to ''The Home,'' at the time the contract was entered into, the sum of $300 and also to convey to ''The Home'' for its use and benefit all the property and estate which she then owned or might thereafter acquire.

Section 5 of article 1 of the by-laws of ''The Home'' provides that:

''All persons to be admitted must submit to a probation period of one year. Upon the expiration thereof the executive board is at liberty to refuse to the applicant a final admission, also the applicant is at liberty to withdraw. In both cases the admission fee paid in will be returned to him after deducting a reasonable charge for board.''

Section 3 of article 3 provides that:

''The admission fee for inmates of the institution is 300 dollars of which 25 is to accompany the application for admission and the 275 dollars are to be paid at the time of admission.''

Section 1 of article 4 of the by-laws requires applicants owning any estate to assign the same to the institution before admission.

By section 3 of article 4, it is provided that:

''In case of a withdrawal approved by the executive board or in case of the demission from the institution of an inmate the estate so transferred shall be returned to the inmate after deducting therefrom the charge for board and any expenses accruing to the institution.''

The evidence shows that deceased paid to ''The Home'' the sum of $300 provided for by the by-laws and the contract, that she entered ''The Home'' on May 7, 1914, and that she died on April 24, 1915, less than one year after her admission to ''The Home.''

The controversy between the parties defendant is as to whether ''The Home'' or deceased's administrator is entitled to the balance due on the note which was indorsed and delivered by deceased to ''The Home,'' as was required of her under the contract and under the by-laws of the institution.

The cause was referred to a master, who sustained the contention of ''The Home'' and found that the legal title to the note was vested in it; that it was the lawful owner and holder thereof and was entitled to the proceeds thereof. Exceptions to this report were sustained by the chancellor and a decree was entered in the cause which found that James F. Bishop, the administrator, was entitled to the note and its proceeds. We do not think that there can be much doubt about the correctness of this decree. The contract entered into by deceased and ''The Home'' provides specifically that it was to be of temporary ''binding force, only, for a period of one year'' from its date. Margaretha Paetzman died before the expiration of the temporary period of one year. It was provided in the contract that should Margaretha Paetzman remain in the institution after the expiration of the year ''after mutual agreement thereupon, then and in such case the provisions of this contract shall be effectual and binding for her lifetime.''

It is true that the second paragraph of the contract provides that ''The Home'' was obligated to admit deceased ''as an inmate for the period of one year from this date, respectively for life.'' The phrase ''respectively for life'' cannot be said to either extend or modify the meaning of the other quoted provisions of the contract. This phrase when read with the whole contract must be held to be meaningless and was apparently inserted in error.

''The Home'' is a charitable institution. Its by-laws were adopted by it, and it is a fair inference, when the character and relationship of the parties are considered, that the contract in question was also pre-

pared by it.   Under these circumstances the language
of the written contract, where it is doubtful and un-
certain in its meaning, should be construed most
strongly against it.   It is our view, however, that
when the by-laws and the contract are read together
no obscurity or ambiguity appears in the language
used, or that doubt can be entertained as to the actual
intention of the parties.

The by-laws of "The Home" and the contract when
read together show the purpose of the parties to the
contract without any ambiguity.   While no express
provision of either the by-laws or the contract pro-
vides for such a contingency as arose as the result of
the death of Margaretha Paetzman, yet we think that
the contract is almost explicit that no binding force
was to attach thereto for a longer period than one
year, as it is expressly provided therein that if said
Margaretha Paetzman should remain in the institu-
tion after the expiration of one year, the contract was
to become "after mutual agreement" effectual   and
binding for her lifetime.

Section 5 of article 1 of the by-laws provides that
all persons admitted to the institution were compelled
to submit to a probationary period of one year, at the
expiration of which time the executive board of "The
Home" had the power to refuse "the applicant a final
admission; also the applicant has the liberty to with-
draw," and the contract seems to have been drawn in
full compliance with these provisions of the by-laws.

The third paragraph of section 1 of article 4 of the
by-laws provides that in case of withdrawal or de-
mission from the institution the estate of an inmate
transferred to it was to be returned "to the inmate,
after deducting therefrom the charge for board and
any expenses accruing to the institution."

It seems clear, then, that the intention of the par-
ties, as gathered from a reading of the contract and
the by-laws, was that deceased had the right to sever
her relationship with "The Home" at any time dur-

142    APPELLATE COURTS OF ILLINOIS.

The Evangelical Lutheran St. S. Cong. v. Bishop, 213 Ill. App. 137.

ing the probationary period of one year, and that she could, under the terms of the by-laws and contract, become a permanent inmate of the institution only after the end of this period and by a mutual agreement with its executive board.

It may be assumed, as urged by counsel for "The Home," that deceased's admission to the institution and the delivery of the note in question to it were voluntary acts on her part, but it is evident that neither party to the contract intended that such acts were to be irrevocable. Under the contract "The Home" had the power to sever its relationship with deceased at the end of the probationary period, and even if the contract was silent as to her rights in the event "The Home" should elect not to admit her permanently to the institution, the law would not permit it to act in such manner as to work an evident injustice to her. The possession by "The Home" of the note, duly indorsed and delivered by the payee named therein, does, as urged by counsel, raise a presumption of ownership of the note in the holder. *Henderson v. Davisson,* 157 Ill. 379; *Dunlap v. Savage,* 196 Ill. App. 378. This presumption, however, may be overcome, and we think it has been overcome by the evidence in this case.

In *Clark v. Mallory,* 185 Ill. 232, the court said:

"While courts will uniformly endeavor to ascertain the intentions of the parties in construing a contract between them, and for that purpose will look into the surrounding circumstances at the time the contract was executed if the language of the instrument is ambiguous or its meaning uncertain, still when the language employed is unequivocal, although the parties may have failed to express their real intention, there being no room for construction, the legal effect of the instrument will be enforced as written."

The decree of the Circuit Court will be affirmed.

*Decree affirmed.*