Second District—November, 1921.     543

The Sisters of the T. O. of St. F. v. Guillaume, 222 Ill. App. 543.

## The Sisters of the Third Order of St. Francis, Appellee, v. Estate of Frances Guillaume, Deceased, Appellant.

### Gen. No. 6,919.

1. Executors and administrators—*claim under contract for care during life properly allowed.* A claim against an estate based upon a note for $3,000 was properly allowed, where said note was given by the decedent to a corporation conducting a hospital, pursuant to a written contract to pay $1,000 cash and give said note in consideration that said decedent should be admitted to the hospital and be cared for during the remainder of her natural life, with the privilege of leaving at any time and receiving the balance of the $4,000 without interest, after deducting $25 per week for the time she remained at the hospital after a stated date, the decedent having died about 4 days after her admittance to the hospital, and the contract not having been entered into hastily and the decedent having been mentally sound and there having been no fraud.

2. Contracts—*mutuality of contract for care of person during life but giving deceased option to withdraw at will.* The fact that a contract entered into by a woman, providing that upon her paying $4,000 she should be taken into the hospital in question and cared for during the rest of her life, gave her the privilege to leave at any time, in which event she was to receive the balance of the $4,000 after deducting $25 per week from a stated time, did not cause the contract to lack mutuality and did not make it an option contract which was not binding on either or both parties.

3. Corporations—*contract by hospital to care for a person during life for a fixed sum not ultra vires as insurance or lottery.* A contract made by a corporation conducting a hospital, providing that for a stated consideration the woman in question should be received into the hospital and cared for during the rest of her life, was not in the nature of life insurance or lottery, and was neither ultra vires nor against public policy, the woman having been sick, needing care and having no place to go and no one to care for her.

4. Contracts—*execution for jury and construction for court.* The question whether the contract under consideration, between a woman and a hospital corporation for the reception of such woman into the hospital and for her care during the rest of her life, was in fact entered into was one of fact for the jury, and the question of the construction of the writing was for the court.

544          APPELLATE COURTS OF ILLINOIS.

The Sisters of the T. O. of St. F. v. Guillaume, 222 Ill. App. 543.

5. APPEAL AND ERROR—*harmless error in admission of evidence when other competent evidence covering same matter.* Although at the hearing upon a claim on a note given by a woman in her life-time to a hospital corporation, testimony as to facts and circum-stances relative to the woman's entering the hospital and as to conversations with said woman was improperly admitted on cross-examination, where the direct examination had been confined to one specific fact, the error was not material where there was other competent evidence concerning almost every detail testified to by the witness.

Appeal from the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the April term, 1921. Affirmed. Opinion filed November 2, 1921. *Certiorari* denied by Supreme Court (making opinion final).

DAN R. SHEEN and JOSEPH STOREY, for appellant.

L. O. EAGLETON, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, the Sisters of the Third Order of St. Francis, a corporation organized under the laws of this State, conducts St. Francis Hospital in Peoria, Illinois, and filed its claim in the probate court of Peoria county against appellant, the estate of Frances Guillaume, deceased, based upon a note of $3,000. The probate court refused to allow the claim and an appeal was prosecuted to the circuit court of Peoria county. Upon a trial by jury there was a verdict for appellee for the full amount of the note and interest. Judgment was rendered upon the verdict and this appeal was prosecuted.

Frances Guillaume was a woman 64 years old. For about 12 years she had been suffering from cancer of the breast. She had been operated upon several times and her right breast had been almost entirely removed. These operations were not successful and afterwards her right lung, arm and the muscles of the chest were affected by the cancer. Her case was

incurable.    Her husband was dead but she had one son and two sisters living.    None of them was in a position to take care of her.    She wanted some place to live where she could be cared for during the rest of her life.

In April, 1919, she had a talk about going to the hospital with George F. Schlink, her uncle.    He told her to go to her sisters in Rockford and stay with them.    She told him, in September, 1919, that she had gone to Rockford and had seen her sisters and they did not want anything to do with her so she was going to the hospital.    She said they wanted her to go to the hospital and that she was going.    Schlink told her to see what kind of a contract she could make with the appellee.    In September, 1919, Mrs. Guillaume told Lizzie Donahue, an intimate friend whom she had known for 25 years, that she wanted to enter St. Francis Hospital, and shortly afterwards the two women went to the hospital to see what arrangements could be made.    They had a talk with the Mother Superior and the entire matter was discussed, including terms.

A day or two later Mrs. Guillaume again went to see her uncle George F. Schlink, and told him she was going to appellee's hospital and that she was to pay $1,000 cash and give her note for $3,000.    He asked her if she did not think that was a pretty steep price and she replied that she did not know.    She then got a pencil and figured what it would cost her a week and said that for 4 years it would be less than $20 a week. He told her if she was satisfied she should make the contract and that it was the place for her to go.

Mrs. Guillaume, late in September or early in October, 1919, again went to the store of Mrs. Donahue and told her that she had selected her room and made all arrangements and was going to the hospital about October 15.    Mrs. Donahue asked her what it was going to cost and she replied that it was going to cost her $4,000.    Mrs. Donahue asked if she did not think

546    APPELLATE COURTS OF ILLINOIS.

The Sisters of the T. O. of St. F. v. Guillaume, 222 Ill. App. 543.

that was a pretty good piece of money and she said she thought it was cheap; that it included a doctor and a nurse and every care; that she wanted to go where she would be welcome; that her sisters did not want her and nobody wanted her with all her money. She wanted to go to the hospital and pay so she could feel she had a right to be there. She said she could pay all cash if she wanted to but she was only going to pay $1,000 and give her note for the balance.

On October 11, 1919, Mrs. Guillaume made her will, disposing of about $25,000 worth of property and the next day she went to the hospital. She was in bad physical condition at that time. Almost immediately she was put to bed and she died on October 19, 1919. On October 15, three days after she went to the hospital and four days before her death, she paid appellee $1,000 and signed a note for $3,000 together with the contract upon which the claim in this case was based. The contract provided that, in consideration of $4,000, appellee was to keep Mrs. Guillaume and furnish her with a private room, board and care, during her natural life at St. Francis Hospital. If Mrs. Guillaume wished to leave at any time, she was to have the balance of the $4,000 without interest, after deducting $25 per week for the time she remained in the hospital from October 11, 1919. Funeral expenses were not included in this contract.

Appellant contends that the contract was not mutual and when a contract is not mutual it is only an option, consequently this instrument was not a contract but merely an option; that the contract and note must be construed together and they will be construed most strongly against the party drawing them, which was appellee; that courts favor compensation and will not enforce penalties, forfeitures, or exorbitant and extortionate provisions.

The contract will be construed according to the language used and in the light of all facts surrounding

the parties at the time it was executed. It cannot be successfully contended that appellee overreached Mrs. Guillaume, or that she was not mentally sound, at least until a short time before her death. Appellee had not been acquainted with Mrs. Guillaume prior to the time she first went to the hospital. Appellee did not solicit her to come and did not ask her to make the contract. Just how ill she really was, apparently, was not known to her or her friends. Prior to that time she was not confined to her home or to her bed. She was able to go about the streets and attend to her own business. None of her friends or relatives could care for her. She had plenty of money to be comfortable. She first consulted with her uncle and talked the entire matter over with him; she then talked with Mrs. Donahue who went to the hospital with her to make arrangements. Even after this, the contract was not entered into hastily but Mrs. Guillaume again went and consulted her uncle with reference to the terms proposed and then decided to make the contract. It is not contended that at any time she was mentally unsound. On the day before she entered the hospital, when she made her will, it is not claimed she was mentally incompetent in making the will or of transacting business. If she was capable of making a will she was capable of making this contract and signing this note. If she had the mental ability to make the contract she had a legal right to do so. A court of law cannot make a contract or modify valid contracts legally entered into.

But appellant contends that even though she had mental capacity to make her will and transact business before she went to the hospital, after she entered the hospital she did not have mental ability to do so. The terms contained in the written contract were the same as those given to Mrs. Guillaume by appellee days, if not weeks, before the instrument was signed and while she was mentally able to transact business. If the

terms of the contract had been agreed upon after she entered the hospital there might be more force in this contention. Immediately after she reached the hospital she became much worse. She could not lie down. She was in great pain and opiates had to be given to relieve the pain. Even in this condition, Dr. Whitten, who attended her during that period, and who had treated her about one month prior thereto, testified that up to the day she entered the hospital she was mentally capable of making a contract and even when she was at her worst, after entering the hospital and just before her death, she was competent to do business some of the hours of the day. The witnesses who were present when the contract was signed testified that she was mentally competent to execute the contract and note at the time she signed them.

Appellee did not know how long Mrs. Guillaume would live. She had been suffering with this disease for over 12 years. She might live one day or she might live a number of years. Whether it was for a day or for years, appellee agreed, under this contract, to care for her and furnish her a home and medical attention as long as she should live. The mere fact that she only lived one week does not render the contract invalid, provided she had mental ability to execute it and did so without restraint. We think the evidence shows that she had mental ability to execute it and that she executed it fairly and voluntarily.

Not only was the contract valid and entered into without fraud, but we cannot agree with the appellant that it was merely an option. It provides that if Mrs. Guillaume wished to leave at any time she could claim the balance of $4,000 without interest, after deducting $25 per week for the time she had been there from October 11, 1919. As we view this contract, the insertion of that clause was an evidence of the utmost good faith and fairness on the part of appellee, and conclusively contradicts any claim of appellant that the

contract was unjust, unfair, unconscionable, profiteering, or that it overreached Mrs. Guillaume. The right to leave at any time was the privilege or option which was given her, but that did not make the contract an option contract which was not binding on either or both parties. Mrs. Guillaume did not exercise the option. She remained there until her death and under the terms of the contract $4,000 was due.

Appellant made a motion in the circuit court to dismiss the appeal from the probate court, which motion the circuit court overruled and this ruling is assigned as error. The grounds of this motion are that Mrs. Guillaume was mentally unable to sign the note and contract; that the writings were prepared by appellee and should be construed most strongly against appellee; that the appeal should have been dismissed and the claim disallowed because the claim is inequitable and unconscionable. What we have already said disposes of this assignment of error. We have held that the contract was valid and binding, hence the circuit court properly refused to dismiss the appeal and disallow the claim.

It is next contended that the issues, under the evidence, presented only a question of law for the court and not a question of fact for the jury; that the court was in error in not holding that the note and contract were ultra vires on the part of appellee as a corporation. In support of this position it is insisted that, under the statute, appellee had power to enter into contracts in relation to its legitimate business which was the operating of the hospital, but that this contract was outside of its charter powers; was speculative in character; was in the nature of life insurance or a lottery; and made it to the pecuniary interest of the appellee to have the patient die as soon as possible; and for these reasons it was not only ultra vires, but was void and against public policy; that the verdict of the jury was only advisory; that the contract

was, in fact, null and void under the statute of frauds.

All the above questions are stated under one heading in the brief and argument and are not argued at any length. The appellee corporation was organized to conduct a hospital where it could care for the sick and afflicted. It has full power and authority to make all contracts incident to the business in which it was engaged. It made the contract with Mrs. Guillaume because she was sick, needed care and had no place to go and no one to care for her. The contract was not in the nature of life insurance; was not a lottery; was not against public policy and was not ultra vires. The question as to whether the contract was in fact entered into was one of fact for the jury. The question of the construction of the writing was one of law for the court. The contract was not void under the statute of frauds because it was in writing. As we have already held, the contract was a valid and substantial obligation and nothing more need be said as to the last contention of the appellant.

Sister Juliana, the secretary of appellee, was called as a witness for the appellant and was asked with reference to the time Mrs. Guillaume came to the hospital, when and under what circumstances the note and contract were signed, and the condition of Mrs. Guillaume after she entered the hospital. She was then asked how she knew that Mrs. Guillaume was afflicted with cancer and replied that Mrs. Guillaume told her so. Upon cross-examination, appellee was permitted to go into all of the facts and conversation relative to Mrs. Guillaume's entering the hospital and this is assigned as error. The court permitted this lengthy cross-examination upon the theory that, while the Sister was an incompetent witness, she was called by appellant, was asked a question which might lead to a conversation and for that reason all of the conversations between the Sister and Mrs. Guillaume were competent.

We think the court was in error in this regard. The direct examination, if it called for a conversation, was limited to one specific fact. This did not justify appellee in going into all conversations with Mrs. Guillaume concerning negotiations prior to the time the contract was made, but, even if this is true, there was other competent evidence concerning almost every detail testified to by Sister Juliana, and appellant was not injured by the erroneous ruling.

The next error assigned is the giving and refusing of instructions. Seven instructions were given on behalf of the appellee. Three were given on behalf of the appellant and thirteen were refused. Most of those given on behalf of the appellee and those refused on behalf of appellant are assigned as error. No good purpose would be served in considering each of those instructions in detail. There were two widely divergent theories upon which this case was tried. Each side offered instructions in accordance with its theory. One of these theories was wrong and the other was right. The trial court held that the theory of appellee was the correct one and instructed the jury accordingly. We are convinced of the correctness of the ruling of the trial court in this regard. We have examined the instructions given and refused and find no reversible error.

The judgment will be affirmed.

*Judgment affirmed.*