SEARS BANK AND TRUST COMPANY, Ex'r of the Estate of Ruth H. Kiesow, Deceased, Plaintiff-Appellee, v. THE HOLMSTAD, INC., Defendant-Appellant.

First District (1st Division)   No. 83—2118

Opinion filed March 29, 1985.

Alan E. Richards and Mary Hylton, both of Richards & Ralph, Chartered, of Libertyville, for appellant.

Michael R. Turoff, Arthur L. Klein, and Adele Rapport, all of Arnstein, Gluck, Lehr, Barron & Milligan, of Chicago, for appellee.

William L. Smith, Jr., of Hollobow & Taslitz, of Chicago, for *amicus curiae*.

PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Defendant, The Holmstad, Inc., appeals from an order granting plaintiff's motion for summary judgment and ordering the return of part of the entry fee paid by plaintiff's decedent upon entering a life-care facility. On appeal, defendant contends that in the absence of a clause specifically providing for a refund in the event of a resident's death, no refund can be ordered.

We affirm.

On December 28, 1979, Ruth Kiesow and defendant, The Holm-

stad, Inc., a life-care facility, entered into a continuing care contract. Pursuant to the contract, Mrs. Kiesow paid a lump sum of $43,900 to Holmstad and agreed to pay a monthly fee of $558. Mrs. Kiesow died on February 14, 1980, about six weeks after she began residing in an apartment at the facility.

On May 18, 1981, plaintiff, Sears Bank and Trust Company, executor of Ruth Kiesow's estate, filed an action against The Holmstad seeking a *pro rata* refund of the entry fee. The parties filed cross-motions for summary judgment. Plaintiff's motion was granted by the trial court. The court reasoned that in the absence of a clause expressly providing for disposition of the entry fee upon the death of a resident the fee should be refunded according to the formula in paragraph 4(D) of the contract.

▪ On appeal, defendant contends the trial court erred in interpreting the contract. It bases its argument on the following contract provisions:

> "4.(C) The Resident shall have the right to terminate this Agreement after occupancy, except during serious illness, by giving 60 days notice in writing to The Holmstad. The Holmstad shall have the right to terminate the Agreement after occupancy, should the Resident not live up to the spirit and purpose of The Holmstad by giving 60 days notice in writing to the Resident. The Resident agrees to pay the monthly maintenance charge through the 60 day notice period.
>
> (D) In the event this Agreement is terminated after occupancy in accordance with provision 3(H) or 4(C), The Holmstad will endeavor to find a new occupant for the apartment. From the entry fee paid by such new occupant The Holmstad will refund the entry fee paid to The Holmstad by the Resident less $1,000.00 which shall be retained as a service fee, and less 2% of the entry fee for each full or partial month of residency including the 60 day notice period, and also less any cost of repairing, renovating and redecorating the apartment not to exceed $500.00.
>
> (E) The entry fee paid by the Resident to The Holmstad shall remain with The Holmstad and shall not be transferable by the Will of the Resident or subject to claim by his estate or heirs. All Monthly Maintenance fees are payments for services rendered."

Defendant maintains that the refund provision of paragraph 4(D) is applicable only if the resident terminates the contract according to paragraph 4(C) by giving 60 days' written notice. Defendant further

contends that paragraph 4(E) allows it to retain the entry fee, that the fee cannot be recovered because the contract does not provide for a refund upon death, and that the resident's estate could recover only if the resident died during a probationary period.

The principal Illinois cases relied on by defendant are *Evangelical Lutheran St. Stephen's Congregation v. Bishop* (1919), 213 Ill. App. 137, and *Christenson v. Board of Charities* (1929), 253 Ill. App. 380. The Holmstad contends these cases require a probationary period before a refund may be granted.

In each of these cases, the resident of a nursing home entered into a contract which expressly provided for a probationary period, after which the home could terminate the agreement. The residents died during the probationary periods and the courts held that the residents' estates were entitled to a refund of their entry fees. The courts reasoned that the residents had paid the entry fees in return for lifetime care and that the homes had not contracted to provide such care during the probationary period.

Although the contract in this case does not create a probationary period, we nonetheless reject defendant's argument that the absence of a probationary period warrants retention of the entry fee. The decisive factor in the aforementioned cases was not the existence of a probationary period; rather, it was the home's failure to promise lifetime care. Similarly, in this case, Holmstad could have terminated the agreement if the resident did not live up to "the spirit and purpose" of Holmstad or if the resident failed to or could not pay the monthly maintenance fee. As in *Bishop* and *Christenson*, there was no promise of lifetime care.

The Holmstad also relies on *Sisters of the Third Order of St. Francis v. Estate of Guillaume* (1921), 222 Ill. App. 543. In *Guillaume*, the contract provided that the resident was to pay $4,000 in consideration for a promise to provide a private room, board and care for the resident's natural life. The resident died three days after entering the facility, and the court held that the hospital was entitled to keep the entry fee. However, Holmstad's reliance on this case is based on a misapprehension of the nature of its commitment. As noted above, Holmstad did not promise lifetime care, and *Guillaume* is therefore inapplicable.

Turning to the issue regarding the trial court's interpretation of the contract, we find that the court correctly held that a refund was required. The few Illinois cases in which similar contracts have been construed base their decisions in part of the home's obligation to provide lifetime care. (See *Christenson v. Board of Charities* (1929), 253

Ill. App. 380; *Sisters of the Third Order of St. Francis v. Estate of Guillaume* (1921), 222 Ill. App. 543; *Evangelical Lutheran St. Stephen's Congregation v. Bishop* (1919), 213 Ill. App. 137.) Cases from other jurisdictions also stress the life-care commitment factor in deciding whether to grant refunds. (See *Howe v. American Baptist Homes of the West, Inc.* (1980), 112 Cal. App. 3d 622, 629, 169 Cal. Rptr. 418, 421, and cases cited therein.) In this case, Holmstad's failure to unequivocally promise lifetime care and the lack of explicit directions for disposition of the entry fee upon the death of a resident leads us to conclude that Holmstad should not be allowed to keep the entire fee.

Our decision is based further on the different purposes of the entry fee and the monthly maintenance fee. Holmstad's affidavit indicated that the entry fee was imposed to recover the expenses incurred in building Holmstad's facilities. According to the affidavit and the contract, the monthly maintenance fee covered the current costs of the amenities provided by Holmstad and the costs of operations. The amenities included meals, utilities, appliances, phone service, maintenance, security patrol and religious, social, cultural and physical activities. Basically, the entry fee covered expenses which were not immediately necessary to provide for the resident's care.

Summary judgment may be granted where the pleadings, affidavits, depositions and admissions on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (*Kubik v. CNA Financial Corp.* (1981), 96 Ill. App. 3d 715, 422 N.E.2d 1; *Molloy v. Santucci Construction Co.* (1979), 78 Ill. App. 3d 249, 397 N.E.2d 125.) Where only the construction and validity of a contract are in issue, summary judgment is a proper procedure. (*Bates v. Select Lake City Theatre Operating Co.* (1979), 78 Ill. App. 3d 153, 397 N.E.2d 75.) Here, the parties agreed in the trial court that no factual disputes existed, and summary judgment was therefore the proper procedure for deciding the issues in the case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.